**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------X
IN RE:

COPPERFIELD INVESTMENTS, LLC.

**MEMORANDUM OF**
**DECISION AND ORDER**
07MC00536 (ADS)

Debtor.

---------------------------------------------------X

**APPEARANCES**:

**PORT AND SAVA**
Attorneys for Movant, Private Capital Group LLC (Nevada)
99 Tulip Avenue, Suite 304
Floral Park, NY 11001
    By:    Gary B. Port, Esq., Of Counsel

**GOLENBOCK, EISEMAN, ASSOR, BELL & PESKOE, LLP**
Attorneys for Appellee/Chapter 11 Trustee David Pauker
437 Madison Avenue
New York, New York 10022
    By:    Douglas L. Furth, Esq., Of Counsel

**ALSTON & BIRD LLP**
Attorneys for Objectors Ficus Investments, Inc.
and Private Capital Group LLC
90 Park Avenue
New York, New York
New York, NY 10016
    By:    Matthew Kenneth Fleming, Esq., of Counsel

**LESTER & ASSOCIATES, P.C.**
Attorneys for the Debtor Copperfield Investment, LLC
600 Old Country Road, Suite 229
Garden City, New York 11530
    By:    Roy J. Lester, Esq., Of Counsel

**OFFICE OF THE UNITED STATES TRUSTEE**
Long Island Federal Courthouse
560 Federal Plaza Room 560
Central Islip, New York 11722-4454
      By:    Al Dimino, Esq.

**SPATT, District J.**

## I.    BACKGROUND

This is a motion to withdraw the order of reference to the bankruptcy court with regard to certain issues arising in the bankruptcy action.

This present case arises from the voluntary Chapter 11 bankruptcy petition filed on behalf of Copperfield Investments, LLC on April 17, 2007. In addition, this matter is related to a civil action pending before the Court, 07CV4858, involving substantially the same factual issues. The following facts are derived from the parties' submissions.

The debtor, Copperfield Investments, LLC ("Copperfield") is a Delaware limited liability company that holds and services sub-performing and non-performing real estate mortgages. The bankruptcy action, first assigned to the Honorable Joel B. Rosenthal, United States Bankruptcy Judge is currently pending before the Honorable Carla E. Craig, Chief United States Bankruptcy Judge. Ficus (USA) Inc., ("Ficus") through its subsidiary Private Capital Group LLC, Florida ("PCG Florida"), is the putative equity owner of Copperfield Investments.

On April 20, 2007, Ficus filed an emergency motion seeking (i) to dismiss the Debtor's bankruptcy petition, (ii) relief from the automatic stay or, in the alternative, (iii) the appointment of a Chapter 11 trustee. On April 26, 2007, the Bankruptcy Court granted the motion only to the extent of appointing a Chapter 11 trustee. The United States Trustee later nominated appellee David Pauker to act as Chapter 11 trustee.

On July 12, 2007, the Chapter 11 trustee filed an anticipatory objection to any and all claims filed by a putative creditor, Thomas Donovan. On October 24, 2007, the bankruptcy court entered a Memorandum Decision and a separate Order disallowing and expunging the claim filed by Thomas Donovan. This Court then affirmed the Decision of the bankruptcy court.

The present dispute arises out of a proof of claim filed on October 15, 2007 on behalf of Banque Portfolio Corp. ("BPC"), Claim #31. On or about November 15, 2007, Ficus and PCG Florida, two of Copperfield's creditors and its purported equity shareholders, filed an objection to Claim #31 on the basis that the parties who filed the claim on behalf of BPC were without authority to do so as Ficus and PCG Florida are the legal owners of BPC. Private Capital Group, LLC, a Nevada Limited Liability ("PCG Nevada") opposes the objection filed by Ficus' and PCG Florida, and claims that it is the rightful owner of BPC and now moves this Court to withdraw the reference to the bankruptcy court on the issue of ownership of BPC.

PCG Nevada's position is set forth in the affirmation of Gary Port, Esq. dated January 14, 2007. According to PCG Nevada, one Christopher Chalavoutis was the original incorporator of BPC. (Port Aff. at ¶ 21). Chalavoutis and his colleague, Thomas Donovan specialize in researching and strategically identifying, locating, and negotiating the acquisition of sub-performing and non-performing mortgages. (Port Aff. at ¶ 23). PCG Nevada states that in or about late 2003 or early 2004, business acquaintances of Donovan, introduced Lawrence Cline as a potential investor. (Port Aff. at ¶ 27). Cline reportedly had a prior business relationship with Joseph Lewis, the equity owner of Ficus. (Port Aff. at ¶ 27–28).

PCG Nevada asserts that Cline informed Donovan and Chalavoutis that Lewis was impressed with their business and proposed to invest $5 million in their organization. On March 9, 2004, Cline formed Copperfield Investments LLC, the debtor, as a vehicle through which Lewis would invest with Donovan. (Port Aff. at ¶ 31). Following initial successes, Lewis showed interest in a joint venture with Donovan and on December 29, 2004, PCG Nevada was formed to be that vehicle, with Cline named as President and Donovan named as CEO. (Port Aff. at ¶¶ 33–35). PCG Nevada asserts that upon its formation, the previously existing, but dormant, BPC was activated and all of its authorized stock shares were issued to PCG Nevada. (Port Aff. at ¶ 36).

PCG Nevada states that it would identify loan packages that it wanted to purchase and upon Lewis' approval, Lewis, through Ficus would transmit funds for those purchases to Copperfield which would purchase the loans. (Port Aff. at ¶ 40). BPC was used primarily as a vehicle to hold deeds for properties where the mortgage was foreclosed, so that PCG Nevada would be insulated from any liability associated with the actual ownership of property. (Port Aff. at ¶ 44–45). In addition, BPC was used to service mortgages, collect rents, and originate some mortgages. (Port Aff. at ¶ 46).

In March of 2007, a dispute allegedly arose between Lewis, Donovan, and Cline, whereby Lewis demanded a restructuring of PCG Florida, relocating its operations to Florida, moving its assets out of the United States, and rescinding the equity interests of Cline and Donovan in PCG Florida, and forcing Cline and Donovan to execute employment agreements. (Port Aff. at ¶ 63). PCG Nevada asserts that when Donovan and Cline rejected these demands, in light of their concerns that the plan was a tax evasion scheme, Ficus commenced a state action, naming Donovan, Cline and several corporate entities as defendants. (Port Aff. at ¶¶ 63–64). That action is pending in Supreme Court, New York County, entitled <u>Ficus Investments, LLC and Private Capital Corp. v. Private Capital Management, LLC</u>, Index No. 600923/07. In addition, PCG Nevada asserts that on April 17, 2007, Cline filed a

petition for Chapter 11 bankruptcy on behalf of Copperfield, listing BPC as a creditor with a disputed debt of $119,000. (Port Aff. at ¶ 65).

The dispute over the ownership of BPC arose when Cline entered into a settlement agreement with Ficus in the state action, which settlement included the transfer of certain assets by Cline to Ficus. (Port Aff. at ¶ 66). PCG Nevada asserts that as a result of the settlement agreement, Cline transferred the ownership of a number of companies, many of which he did not own to Ficus, including Copperfield, BPC, and PLESCO. (Port Aff. at ¶ 67). In addition, PCG Nevada asserts that the bankruptcy court has remained "blithely unconcerned" about the possible illegality and nullity of these transfers. (Port Aff. at ¶ 69). Accordingly, PCG Nevada contends that Ficus and PCG Florida's assertion of ownership over BPC is inappropriate.

In further support of its motion, PCG Nevada submits the affirmation of Daniel S. Torchio, who states that he is retained to defend BPC in the state court action. Torchio explains that BPC was formed on or about March 22, 2000 by Chalovoutis, and was authorized to issue 200 shares of stock having no par value. (Torchio Aff. at ¶ 7). Torchio asserts that the objection to Claim # 31 asserts that BPC was duly sold, transferred and assigned by Cline, as "sole owner" of BPC, through a series of transfers, to PCG Florida. "Ficus and PCG [Florida] contend that since these purported transfers occurred prior to the filing of BPC's proof of claim by its Secretary of Record Peter Kamaran, such proof of claim was unauthorized and

without effect." (Torchio Aff. at ¶ 8). In addition, Torchio states that BPC disavows and rejects the validity of the alleged sale and assignment of its shares by Cline, and seeks to resolve the matter by judicial intervention.

On November 1, 2007, PCG Nevada filed a civil action in this Court against Cline, PCG Florida, Ficus, and others, on behalf of nominal defendant BPC, for an order setting aside the alleged fraudulent transfer of BPC and its assets and an accounting of any assets disposed of by the defendants. In addition, there are causes of action sounding in conversion, constructive trust, and breach of fiduciary duty. That action remains pending before this Court.

In opposition to the present motion, Ficus and PCG Florida explain that PCG Florida is 80% owned by Ficus and the other 20% was owned by a company known as Private Capital Management, LLC ("PCM"). PCM, in turn, is owned equally by Cline and Donovan. Ficus asserts that by a temporary restraining order granted in the state court action, it was awarded exclusive operational control of PCG Florida.

Ficus alleges that after it discharged Cline from PCG Florida upon discovering his conversion of company assets, Donovan orchestrated the resignation of most of PCG Florida's employees. Ficus and PCG Florida assert that Donovan is likewise guilty of misappropriation of company assets and embezzlement. In addition, Ficus states that it has employed a team of lawyers, investigators and accountants to review all of the available books, records and mortgage related documents of PCG Florida.

During the course of the state court action, Cline ceased his joint defense with Donovan, and entered into a settlement agreement with Ficus and PCG Florida. Ficus and PCG Florida assert that on July 26, 2007, as part of his settlement of the state court action, Cline transferred, assigned, and conveyed all of his interest in BPC to PCG Florida. Accordingly, as Ficus and PCG Florida claim to own BPC, they objected to the filing of a claim purportedly on behalf of BPC against the Copperfield estate. In addition, PCG Florida and Ficus contend that the present motion is nothing more than an attempt by Donovan to delay the proceedings in the Copperfield bankruptcy matter.

Recently, on September 19, 2008, the chapter 11 trustee sent a notice advising the Court that on July 22, 2008, the trustee filed a separate objection to Claim #31. The trustee explains that its objection asserts that regardless of who may own BPC, **it** has no valid claim against the Copperfield estate. The trustee contends that the present motion should be denied to permit the bankruptcy court to first determine the threshold issue of whether BPC has any valid claim against the Copperfield estate. Separately, the trustee asserts that the Ficus and PCG Florida objection to Claim #31 fall within the core functions of the bankruptcy court and withdrawal of the reference is unwarranted. PCG Nevada objects to the trustee's letter and reiterates its support for the motion to withdraw the reference.

While this recent development could possibly vitiate this need for the Court to decide whether the bankruptcy court has jurisdiction to determine ownership of BPC, it is unclear in what order the bankruptcy court will treat the objections to Claim #31. However, as this Court finds that the bankruptcy court is the proper place for the ownership issue to be determined, it will deny PCG Nevada's motion in its entirety.

## II. DISCUSSION

28 U.S.C. § 1334(a) provides that "[e]xcept as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11." Section 1334(b) provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." Section 157(a) permits district courts to refer to the bankrupcty court "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 . . . ." The Eastern District has a standing order of reference in place. *See* Eastern District Administrative Order 264. "A case arising under title 11 means essentially the cause of action is created by title 11 or that the right to relief necessarily depends on resolution of a substantial question of bankruptcy law." *Diagnostic International, Inc. v. Aerobic Life Prods. Co.*, 257 B.R. 511, 514 (D. Ariz. 2000).

28 U.S.C. Section 157(d) allows for withdrawal of the reference of matters to the bankruptcy court in two circumstances. Permissive withdrawal is allowed in "any

case or proceeding referred under this section . . . for cause shown." 28 U.S.C. § 157(d). Mandatory withdrawal, not applicable here, requires that the "district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." *Id.*

In determining whether the reference to the bankruptcy court should be permissively removed, the Second Circuit has established the following factors: "whether the claim or proceeding is core or non-core, whether it is legal or equitable, and considerations of efficiency, prevention of forum shopping, and uniformity in the administration of bankruptcy law." *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993). Absent consent of the parties, a bankruptcy court cannot issue dispositve orders in a non-core proceeding, but instead may submit proposed findings of fact and conclusions of law to the district court. 28 U.S.C. § 157(c). PCG Nevada contends that the determination of ownership of BPC is a non-core issue involving only state-law matters, and that it is entitled to a jury trial of these matters in the district court.

### A. Core vs. Non-Core Proceedings

Core proceedings are "those that are unique to or uniquely affected by the bankruptcy proceedings, or directly affect a core bankruptcy function." *Adelphia Communications Corp. v. Rigas*, 2003 WL 21297258, at *2 (S.D.N.Y. June 4, 2003). "Section 157(b)(2) sets forth a non-exhaustive list of proceedings that Congress has deemed core and over which bankruptcy courts have jurisdiction." *McCord v. Papantoniou*, 316 B.R. 113, 120 (E.D.N.Y. 2004). The list includes:

> (A) matters concerning the administration of the estate;
>
> (B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;
>
> (C) counterclaims by the estate against persons filing claims against the estate;
>
> . . .
>
> (H) proceedings to determine, avoid, or recover fraudulent conveyances;
>
> . . .
>
> (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims . . . .

28 U.S.C. § 157(b)(2).

The Second Circuit has stated that the grant of jurisdiction to the bankruptcy courts should be broadly interpreted and is "close to or congruent with constitutional limits." *McCord*, 316 B.R. at 120. In addition, "a determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." § 157(b)(3).

It is unclear from the parties' moving papers whether they believe that the bankruptcy court is currently in a position to determine only the issue of ownership of BPC, or whether it can rule on PCG Nevada's remaining claims in the civil case pending before this Court. With regard to this motion, the issue pending before the bankruptcy court is the validity of Claim #31 against the Copperfield estate and the objections against it. It is not apparent that the bankruptcy court can award damages that are sought against the group of defendants on the separate causes of action raised in the federal civil case.

PCG Nevada contends that BPC's Claim #31 arises out of the fraudulent misappropriation of the assets and identity of that company, as well as separate dealings between BPC and Copperfield. Further, PCG Nevada contends that the primary basis of the objection to Claim #31 is the issue of ownership of BPC. PCG Nevada states that legal ownership of BPC will turn on matters of state law, and does not arise under any provision of the Bankruptcy Code. In addition, PCG Nevada

contends that its separate civil claims for fraud and conversion require trial by jury and, as they are non-core issues, the bankruptcy court cannot conduct any such trial. PCG Nevada confuses the issue of the validity of Claim #31 as against the bankruptcy estate and the claims it has raised against a separate group of defendants in the federal civil action. These are separate matters.

Claims of a fraudulent conveyance and the transfer of BPC and its assets is at the heart of both Claim #31 and the resulting ownership dispute. Matters of fraudulent conveyance are routinely raised and adjudicated in bankruptcy courts and are considered core matters when they relate to a bankruptcy.

In *McCord v. Papantoniou*, 316 B.R. 113 (E.D.N.Y. 2004), the Chapter 7 bankruptcy trustee filed an adversary proceeding in bankruptcy court against the debtor's majority shareholder and his wife for breach of fiduciary duty and conversion. *McCord*, 316 B.R. at 116. Several of the trustee's claims arose out of the unlawful transfer of debtor assets to the shareholder's wife and included claims for fraudulent conveyance under New York's Debtor and Creditor Law *Id.* at 117, 121. The Court found that the fraudulent conveyance claims were indisputably core in light of their inclusion in § 157(b)(2). *Id.* at 121. In addition, the court determined that the trustee's claims for breach of fiduciary duty were sufficiently related to the core proceedings to be heard by the bankruptcy court because recovery on that claim would inure to the benefit of the estate and thus "could conceivably have an[] effect on the

estate . . . ." *Id.* at 121–22 (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)).

Moreover, where adversary proceedings are necessary to determine the allowability of a claim, such proceedings are part of the bankruptcy court's core functions. In *Gulf States Exploration v. Manville Forest Prods. Corp. (In re Manville)*, 896 F.2d 1384 (2d Cir. 1990), the plaintiff filed a claim against the debtor's estate arising from an alleged breach of contract. The bankruptcy court held that the resulting adversary proceeding was core and the district court denied the plaintiff's motion to withdraw the reference. *Gulf*, 896 F.2d at 1386. The plaintiff appealed, arguing that its state law breach of contract claim required adjudication by an Article III court. *Id.* at 1388.

The Second Circuit affirmed the refusal to withdraw, stating that "the mere fact that [the plaintiff's] claim raises issues of state law does not preclude a holding that the adversary proceeding is core. The relevant inquiry is whether the nature of this adversary proceeding, rather than the state or federal basis for the claim, falls within the core of federal bankruptcy power." *Id.* at 1389 (internal citations omitted). The court explained that the proceeding at issued involved "a simple objection to a proof of claim and clearly falls within the literal language of § 157(b)(2)(B), which provides that all proceedings involving the 'allowance or disallowance of claims against the estate [with limited exceptions] are core matters.'" *Id.* at 1389.

The *Gulf* court further distinguished *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S. Ct. 2858, 73 L. Ed. 2d 598 (1982), where the Supreme Court announced that state-created rights, such as those involving breach of contract, must be adjudicated by an Article III judge. The court explained that the action before it was vastly different than *Marathon* because "[b]y filing a proof of claim, [the plaintiff] submitted itself to the equitable power of the bankruptcy court to disallow its claim." *Gulf*, 896 F.2d at 1389 ("Of course, the state-law right underlying the claim could be enforced in a state court proceeding absent the bankruptcy, but the nature of the state proceeding would be different from the nature of the proceeding following the filing of a proof of claim." (quoting *In re Wood*, 825 F.2d 90, 97 (5th Cir. 1987)). Here, too, a claim has purportedly been filed on behalf of BPC and the bankruptcy court may determine the allowance or disallowance of that claim.

In *In re Iridium Operating, LLC*, 285 B.R. 822 (S.D.N.Y. 2002), a Committee of Unsecured Creditors brought an adversary action in bankruptcy court on behalf of the debtor against a creditor, alleging breach of contract, breach of fiduciary duty, and fraudulent transfer/conveyance and the action was automatically referred to the bankruptcy court. *Iridium*, 285 B.R. at 827–28. The court found that the traditionally non-core claims became core because they arose from the same operative facts as the related core claims and the defendant creditor had filed a proof of claim against the

estate. *Id.* at 830. The court explained that: "'by filing a claim against a bankruptcy estate the creditor triggers the process of 'allowance and disallowance' of claims,' thereby subjecting himself to the bankruptcy court's equitable power.'" *Id.* at 830 (quoting *Langenkamp v. Culp*, 498 U.S. 42, 44, 111 S.Ct 330, 112 L.Ed.2s 343 (1990) (per curiam)).

"Traditionally non-core claims against a creditor in an adversary proceeding will be considered core if: (1) the claim arises out of the same transaction as the creditor's proof of claim or setoff claim, or (2) the adjudication of the adversary proceeding claim would require consideration of issues raised by the proofs of claim or setoff claim such that the two claims are logically connected." *Iridium*, 285 B.R. at 831–32. In this situation, first and foremost, the central issue for the bankruptcy court is the validity of Claim #31 and the resolution of the objections to it. Indeed, Claim #31 itself purports to be for the alleged breaches of contract, fraud, conversion, and aiding and abetting fraud in an undetermined amount—all matters directly related to the ownership transfer of BPC. Thus, the issue of ownership is "so factually and legally interconnected" with BPC's claim against the estate, that its "designation as core does not breach [the *Marathon*] limits. *In re CBI Holding Co., Inc.*, 529 F.3d 432, 462 (2d Cir. 2008).

Further, the Court does not see a distinction in this case simply because the objection dispute is between two purported creditors rather than between the trustee or

debtor and a third party. Accordingly, the Court finds that the determination of the ownership of BPC falls within the bankruptcy court's core functions.

### B. Nature of the Claims: Legal or Equitable

PCG Nevada contends that its right to a jury trial will be impinged if the matter remains before the bankruptcy court. It asserts, in passing, that its claims for fraud and conversion require a trial by jury that cannot occur in the bankruptcy court. The Court disagrees.

Indeed, actions for fraudulent conveyance have generally been held legal in nature, requiring trial by jury. *McCord*, 316 B.R. at 123; *but see In re Darby Supermarket, Inc.*, 98 B.R. 697, 698 (E.D. Pa. 1989) ("[W]here an adversary fraudulent conveyance action seeks only equitable relief, such as the reconveyance of property, the avoidance of a lien, or an accounting, the right to a jury trial does not exist." (internal quotations and citations omitted)). 28 U.S.C. § 157(e) provides that: "If the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court and with the express consent of all parties." PCG Nevada states that it declines to consent.

However, according to the Second Circuit, "a creditor loses its jury trial right . . . with respect to claims whose resolution affects the allowance or disallowance of the creditor's proof of claim or is otherwise so integral to restructuring the debtor-creditor

17

relationship." *CBI Holding Co., Inc.*, 529 F.3d at 466. As both the proof of claim itself and the objections thereto raise the issue of fraudulent transfer of ownership of BPC, a jury trial as to that issue is waived. In addition, "[c]ourts routinely deny motions to withdraw the reference despite a litigant's refusal to consent to a jury trial in bankruptcy court because of prevailing concerns about judicial economy." *McCord*, 316 B.R. at 125.

Further, PCG Nevada once again confuses the matters pending before the bankruptcy court against the Copperfield estate and the civil action in this Court. PCG Nevada has filed a separate civil action in this court, against a separate group of defendants, and its claims for legal relief for fraud and conversion against those parties remain pending in this court. A trial as to those issues against the federal civil action defendants can be had in this Court.

Accordingly, as PCG Nevada has waived a right to a jury trial as to the issue of ownership of BPC, and retains the right to a jury trial on the claims pending in the action in this Court, the right to a trial by jury is not impinged by the ownership issue remaining in the bankruptcy court. Further, as the bankruptcy court is already familiar with the facts and circumstances surrounding the objection filed by PCG Florida and Ficus, judicial economy favors that the matter remain in the bankruptcy court.

### C. The Remaining *Orion* Factors

"Hearing core matters in a district court could be an inefficient allocation of judicial resources given that the bankruptcy court generally will be more familiar with the facts and issues." *Orion*, 4 F.3d at 1101; *see also McCord*, 316 B.R. at 126 (finding that defendant's right to and lack of consent to a jury trial insufficient cause to withdraw the reference for pretrial purposes where it would be most efficient for the bankruptcy court to retain jurisdiction). Here, concerns of judicial efficiency favor the denial of PCG Nevada's motion as the bankruptcy court is already intimately familiar with the Copperfield bankruptcy and the claims of the parties involved. *See Iridium*, 285 B.R. at 835.

In addition, the Court finds that the remaining factors—prevention of forum shopping and uniformity in the administration of the bankruptcy law—favor the denial of PCG Nevada's motion to withdraw the reference.

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED**, that the motion to withdraw the reference to the bankrupcty court by Private Capital Group, LLC, a Nevada limited liability company, is denied, and it is further

**ORDERED**, that the Clerk of the Court is directed to close this action, 07-mc-00536.

**SO ORDERED**.

Dated: Central Islip, New York
September 29, 2008

　　　　　　　　　　　　　　　　　　　　　　　　*/s/ Arthur D. Spatt*
　　　　　　　　　　　　　　　　　　　　　　　　ARTHUR D. SPATT
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge